UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACK FINANCIAL SERVICES, a division of VFS US LLC | ) ) ) | FILED STAMP: MAY 28, 2008 |
| | ) | 08CV3079 |
| Plaintiff | ) | JUDGE NORGLE |
| vs. | ) | MAG. JUDGE ASHMAN |
| | ) | Case No.   J. N. |
| CRESTA, INC. and SVETOZAR SABEV | ) ) | Hon. |
| Defendants | ) | |

## VERIFIED COMPLAINT

Plaintiff MACK FINANCIAL SERVICES, a division of VFS US LLC ("VFS US LLC"), for its Verified Complaint against defendants CRESTA, INC. ("Cresta") and SVETOZAR SABEV ("Sabev"), states as follows:

### Parties

1.    Plaintiff VFS US LLC is a Delaware limited liability company whose sole member is VNA Holding, Inc., a Delaware corporation.  VFS US LLC is a citizen of the State of Delaware.

2.    On information and belief, defendant Cresta is an Illinois corporation with its principal place of business at 2951 Old Higgins Road, Elk Grove, Cook County, IL. Cresta is a citizen of the State of Illinois.

3.    On information and belief, defendant Sabev is an individual who lives at 711 N. Kennicott Avenue, Arlington Heights, Cook County, IL.  Sabev is a citizen of the State of Illinois.

Jurisdiction and Venue

4.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because defendants are all citizens of Illinois and plaintiff is not a citizen of Illinois. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.    Venue is proper in the Northern District of Illinois – Eastern Division under 28 U.S.C. § 1391(a), because on information and belief defendants reside in this judicial district and a substantial part of the events giving rise to the claim occurred in this district.

COUNT I

(Breach of Contract By Cresta)

6.    Plaintiff VFS US LLC hereby incorporates by reference the allegations in paragraph 1-5 above as if set forth herein.

7.    On July 14, 2006, defendant Cresta entered into a Credit Sales Contract No. 7552902 ("Sales Contract") in the original principal amount of $205,000.00, plus documentation fees of $295.00, and finance charges of $41,944.72, to purchase:

| | Year | Make | Model | VIN/Serial Number |
|------|------|------|-----------|-------------------|
| i. | 2002 | Volvo | VNL64T-660 | 4V4NC9GH62N330541 |
| ii. | 2002 | Volvo | VNL64T-660 | 4V4NC9GH82N330542 |
| iii. | 2002 | Volvo | VNL64T-660 | 4V4NC9GH12N330544 |
| iv. | 2002 | Volvo | VNL64T-660 | 4V4NC9GH32N330545 |
| v. | 2002 | Volvo | VNL64T-660 | 4V4NC9GH82N330508 |

A copy of the Sales Contract is attached as Exhibit A.

8.     A written assignment ("Assignment") to plaintiff VFS US LLC of all of the seller's rights under the Sales Contract was made as of July 14, 2006. A copy of the Assignment is attached as Exhibit B.

9.     On or about July 14, 2007, defendant Cresta failed to make payments when due pursuant to the Sales Contract. Defendant Cresta breached the Sales Contract by failing to make payment when due. A copy of the Notice sent to Cresta is attached as Exhibit C.

10.     On or about November 5, 2007, the five Volvo trucks were repossessed pursuant to the terms of the Sales Contract.

11.     On or about December 12, 2007, the five Volvo trucks were sold at a private sale pursuant to the terms of the Sales Contract. The five Volvo trucks were sold for a total of $70,000, less fees of $14,225.00 and payments due of $170,669.31, leaving a deficiency balance of $114,894.31. A copy of the Deficiency Balance Calculation is attached as Exhibit D.

12.     Pursuant to the terms of the Sales Contract, defendant Cresta is "liable for and will promptly pay any deficiency resulting from any disposition of [the Volvo trucks] after default." On or about December 17, 2007, demand was made on Cresta to pay the deficiency of $114,894.31. A copy of the Demand is attached as Exhibit E.

13.     Defendant Cresta has failed to pay the deficiency balance. Defendant Cresta's failure to pay the deficiency is a breach of the Sales Contract.

14.     Pursuant to the terms of the Sales Contract, defendant Cresta is liable for interest at a rate of 18% per annum on the entire unpaid balance until paid. The total due including interest to May 21, 2008, is $124,085.85.

15.    Pursuant to the terms of the Sales Contract, defendant Cresta is liable for "all attorneys' fees and all other costs and expenses which may be incurred by [plaintiff VFS US LLC] in enforcement of the Contract …."

16.    As a direct result of defendant Cresta's breach of the Sales Contract plaintiff VFS US LLC has been damaged in the amount of $124,085.85 as of May 21, 2008 with interest continuing to accrue at a rate of 18% per annum, plus costs and attorney's fees.

WHEREFORE, plaintiff VFS US LLC demands judgment in its favor and against defendants Cresta and Sabev in the amount of $124,085.85, with interest continuing to accrue at a rate of 18% per annum, plus costs and attorney's fees in an amount to be proven at trial.

<u>COUNT II</u>

(Breach of Contract By Sabev)

17.    Plaintiff VFS US LLC hereby incorporates by reference the allegations in paragraph 1-16 above as if set forth herein.

18.    On July 14, 2006, defendant Sabev entered into a Continuing Guaranty ("Guaranty"), pursuant to which he unconditionally guaranteed the full payment and performance of all obligations of Cresta with respect to the Sales Contract.  A copy of the Guaranty is attached as Exhibit F.

19.    Defendant Sabev failed to make payments for Cresta.  Defendant Sabev breached the Guaranty by failing to make payments for Cresta.  A copy of the Notice sent to Sabev is attached as Exhibit G.

4

20.    Demand was made on Sabev to pay the deficiency for Cresta.  A copy of the Demand is attached as Exhibit H.

21.    Defendant Sabev has failed to pay the deficiency balance.  Defendant Sabev's failure to pay the deficiency is a breach of the Guaranty.

22.    Pursuant to the terms of the Guaranty, defendant Sabev is liable for interest at a rate of 18% per annum on the entire unpaid balance.

23.    Pursuant to the terms of the Guaranty, defendant Sabev is liable for "all attorneys' fees and all other costs and expenses which may be incurred by [plaintiff VFS US LLC] in enforcement of the Contract ...."

24.    As a direct result of defendant Sabev's breach of the Guaranty, plaintiff VFS US LLC has been damaged in the amount of $124,085.85 as of May 21, 2008, with interest continuing to accrue at a rate of 18% per annum, plus costs and attorney's fees.

WHEREFORE, plaintiff VFS US LLC demands judgment in its favor and against defendants Cresta and Sabev in the amount of $124,085.85, with interest continuing to accrue at a rate of 18% per annum, plus costs and attorney's fees in an amount to be proven at trial.

Respectfully submitted,

s/Kenneth F. Berg

Kenneth F. Berg
Peter R. Sonderby
ULMER & BERNE LLP
One N. Franklin Street
Suite 1825
Chicago, IL 60606
Tel. 312-324-8006
Fax. 312-324-8001
*Attorneys for Plaintiff*

1707192v1
30491.00035

## A F F I D A V I T

COUNTY OF _Guilford_ )
                   ) ss.
STATE OF NORTH CAROLINA  )

        _Tracie Dean_ having been duly sworn on oath, hereby deposes and says:

    1.    My name is _Tracie Dean_ and I competent to testify in open court as to the matters contained herein.

    2.    I am the _Litigation Specialist_ of VFS US LLC and I am duly authorized to execute this Affidavit on behalf of VFS US LLC.

    3.    I have read the foregoing Verified Complaint against Cresta, Inc. and Svetozar Sabev. I hereby certify that the statements set forth in the Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters I verily believe the same to be true.

DATED:   _5/21/08_

                              VFS US LLC

                              By: _Tracie Dean_

                              Its: _Litigation Specialist_

    I, the undersigned, Notary Public in and for _Guilford_ County, North Carolina, do hereby certify that _Tracie Dean_, personally known to me to be the same person whose name is subscribed to the foregoing Affidavit, appeared before me this day in person, and acknowledged that (s)he signed, sealed, and delivered the foregoing Affidavit as her/his free and voluntary act, for uses and purposes therein set forth.

SIGNED and SWORN TO Before me this _21st_ day of _May_, 2008

_Shelley M. Mickey_
     Notary Public

My Commission Expires On: _5/26/10_

SHELLEY M. MICKEY
NOTARY PUBLIC
GUILFORD COUNTY, NC

1707192v1
30491.00035

6


08CV3079 J. N.
JUDGE NORGLE
MAG. JUDGE ASHMAN

# MACK FINANCIAL SERVICES

**Credit Sales Contract**

**(Security Agreement)**

Customer No. 7552902   Schedule No.

**Description of Equipment Purchased and Financed (The "Equipment")**

| Year | Make | Model | VIN/Serial Number* | Attachment/Body |
|------|------|-------|--------------------|-----------------|
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH62N330541 | |
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH81N330542 | |
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH12N330544 | |
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH32N330545 | |
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH82N330508 | |

*Last 4 numeric characters of serial number for construction equipment.

**Address where Equipment will be located:**

2951 OLD HIGGINS RD , ELK GROVE, IL, 60007

**Trade In Description**

Total Value: 0.00    Total Liens: 0.00

| | | |
|---|---|---|
| 1. | Equipment Cash Sales Price | 205,000.00 |
| 2. | Net Trade-in Allowance (Net Value – Total Liens) | 0.00 |
| 3. | Subtotal (1-2) | 205,000.00 |
| 4. | Sales Tax | 0.00 |
| 5. | Federal Excise Tax (% of 1) | 0.00 |
| 6. | Guaranteed Auto Protection (GAP) | 0.00 |
| 7 | Documentation Fees | 295.00 |
| 8. | Registration/Title Fees | 0.00 |
| 9 | Other Charges | 0.00 |
| | Applied Funds | 0.00 |
| | FL Doc Stamp | |
| | TN Record Tax | |
| | MD Record Tax | |
| 10 | Total Itemized Charges  (4 through 9) | 295.00 |
| 11. | Cash Down Payment | 0.00 |
| 12. | Amount Financed  (3+10-11) | 205,295.00 |
| 13 | Finance Charge | 41,944.72 |
| 14 | Total Obligation  (12+13) | 247,239.72 |

Buyer agrees to pay the "Total Obligation" (Item 14) in accordance with the following schedule (and any additional pages) of schedule attached).

| No. of Installments | Start/Due Date | Payment Amt. | Total |
|---------------------|----------------|--------------|-------|
| 42 | 08/14/2006 | $5,886.66 | 247,239.72 |

Total No. Payments: 42    Total Amount: 247,239.72

If shown below, Buyer has elected to finance certain services through this Contract. The terms of each service are contained in separate documents, and Buyer agrees that such agreements are not part of this Contract

| | Term (months) | Total Charge |
|---|---|---|
| (Item 6) GAP | 42 | 0.00 |

Seller's Initials  _DM V_
LA06 06 001

- 1 (4) -

Buyer's Initials  _SS_  Co-Buyer _____



ALL-STATE LEGAL®

**EXHIBIT**

_A_





## Terms of Credit Sales Contract

**Credit Sale:** The below-signed buyer (the "Buyer," and if more than one, jointly and severally, the "Buyer") has chosen to purchase and hereby purchases on credit the Equipment from the below-signed seller (the "Seller") and agrees to pay in full the Total Obligation set forth in Item 14 above. In addition to the Total Obligation, Buyer agrees to pay all other amounts owed to Seller under this Contract (collectively, the "Indebtedness") when due.

**Security Interest:** In order to secure payment of the Indebtedness and all other debts and obligations at any time owing from Buyer to Seller and its affiliates, Buyer hereby grants to Seller and its affiliates a security interest in and to the Equipment, together with all present and future attachments, accessions, replacements, parts, repairs, additions, substitutions, chattel paper, and proceeds, including amounts payable under any insurance policies (the "Collateral"). Buyer agrees that a photocopy or other reproduction of this Contract or of any financing statement may be filed as a financing statement.

**Assignment and Waiver of Defenses:** Buyer acknowledges receipt of notice that Seller is assigning this Contract immediately upon execution to Mack Financial Services, a division of VFS US LLC whose primary place of business is located in North Carolina ("Assignee") and that: (a) Assignee has all of Seller's rights and remedies, and all of Buyer's agreements, representations, and warranties shall be deemed to have been made to Assignee as if Assignee were a party to this Contract; (b) Seller is not Assignee's agent for any purposes; (c) Seller will not have any power or authority to modify any term of this Contract; (d) Buyer will not assert any claims or defenses Buyer may have against Seller or any other party and will settle all claims, defenses, set-offs, and counterclaims it may have against Seller or the manufacturer of the Equipment (the "Manufacturer"), including, but not limited to, defects in the Equipment, directly and solely with Seller or the Manufacturer; (e) Assignee may compensate Seller in excess of the Amount Financed in exchange for assignment of this Contract; (f) Assignee's decision to purchase this Contract from Seller relies, in part, upon the warranties and agreements made by Buyer, and (g) all references to "Seller" in this Agreement (other than for purposes of section (d) of this paragraph and the Seller's obligation to sell the Equipment to Buyer) shall be deemed to refer to Assignee and its successors and assigns.

**No Warranties:** THERE ARE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OTHER THAN THOSE MADE BY THE MANUFACTURER OF THE COLLATERAL. Buyer acknowledges that it is not relying on any representations from Seller (or any other party) relating to financing made under this Contract.

**Buyer's Representations:** Buyer warrants and represents that: (a) Buyer is indebted for the Total Obligation shown in Item 14; (b) except for the security interest granted to Seller and its affiliates, the Equipment will remain free from all liens and security interests; (c) all information supplied by Buyer on any financial, credit, or accounting statement to Seller is and will be true, correct, and genuine, and Buyer consents to the ongoing review of Buyer's credit reports during the term of this Contract; (d) the Equipment is to be used only for business purposes; (e) Buyer has full authority to enter into this Contract and in so doing it is not violating any law, regulation, or agreement and has taken all necessary and appropriate actions to make this Contract binding and enforceable against Buyer in accordance with its terms; and (f) any Equipment traded in is owned by Buyer and free of all security interests and liens except as stated.

**Buyer's Agreements:** Buyer agrees: (a) to defend at its own cost any action, proceeding, or claim affecting the Equipment; (b) to maintain the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and Manufacturer's warranties; (c) to promptly pay all taxes, assessments, license fees, and other public or private charges when levied against the Equipment or this Contract; (d) to obtain a certificate of title and/or, if applicable, a UCC financing statement, on each item of the Equipment showing Seller's first priority security interest and to preserve and perfect that security interest; (e) to not misuse, secrete, sell, rent, lend, encumber, or transfer any of the Equipment nor permit it to be operated by or be in the possession of any other party; (f) that Seller may enter any premises at any reasonable time to inspect the Equipment; (g) to not assign or encumber any of its rights or obligations under this Contract; (h) to provide Seller with quarterly and annual financial statements within 30 and 90 days, respectively, of the end of the applicable period; (i) to reimburse Seller immediately after written notice for any expenses incurred by Seller to perform any of the Obligations of Buyer; and (j) that the Equipment will not be used to transport, dig, load, or haul environmentally hazardous materials, contaminants, or waste products.

**Insurance and Risk of Loss:** All risk of loss, damage, or destruction of the Equipment will at all times be on Buyer. Buyer will keep the Equipment insured at Buyer's expense against liability in an amount as required by Assignee, and against loss or damage by fire, theft, and other customary risks for the Equipment's full insurable value, with a deductible not to exceed $2,500 per item of Equipment. Coverage and insurer will be subject to Seller's reasonable approval, with Seller being named an additional insured and/or loss payee on the policies, as applicable. Each policy will further provide that Seller's interest can not be invalidated by any act, omissions, or neglect of any party other than Seller and that the insurer will give Seller thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Buyer or insurer. Buyer will promptly deliver a copy of each policy or insurance certificate to Seller and proof of renewal at least 30 days prior to expiration or cancellation. If Buyer fails to so insure the Equipment, Seller may purchase such insurance at Buyer's expense, purchase of which need not include liability or protection of Buyer's interest. Buyer hereby irrevocably appoints Seller as Buyer's attorney-in-fact to execute and endorse all documents, checks, or drafts in Buyer's name and to submit any proof of loss to collect such insurance.

**Duty to Pay:** Any warranty, service contract, insurance policy, or other service financed through this Contract is separate and independent of this Contract and is the sole obligation of the issuer of such warranty, service contract, insurance policy, or other service. Buyer shall pay each installment on time regardless of any claimed defect in the Equipment or any other entity's breach of any warranty, service contract, or insurance policy. Each installment is due monthly without notice beginning on the "Start/Due Date" and continuing on the same day of each month thereafter.

**Late Charge and Check Charge:** A late charge of 5% of any overdue amount on any installment will be charged for each installment not received in full in immediately good funds within fifteen (15) days of its due date. All other Indebtedness due from Buyer to Seller not paid by its respective due date and, upon the occurrence of an Event of Default, the entire unpaid balance of the Total Obligation, will bear interest at the rate of 18% per annum or such lesser rate as is required under applicable law. All payments may at the option of the Seller be applied first to late charges, then to other charges, then to accrued and unpaid finance charges, and last to the unpaid balance of any amount financed. Buyer shall be responsible for and pay to Seller a returned check fee, not to exceed the maximum permitted by applicable law, which fee will be equal to the sum of (i) the actual bank charges incurred by Seller, plus (ii) all other actual costs and expenses incurred by Seller. The returned check fee is payable upon demand as Indebtedness secured by the Collateral under this Contract.

**Events of Default:** Each of the following is an "Event of Default" under this Contract: (a) Buyer fails to pay any installment to Seller in full when due or fails to make any other payment of the Indebtedness or any other amount due under any other agreement with Seller or any affiliate; (b) Buyer breaches any provision, representation, or warranty of this Contract or any other contract held by, or agreement with Seller or any affiliate; (c) any of the Equipment is lost, severely damaged, destroyed, or seized; (d) Buyer or any guarantor dies, becomes insolvent, ceases to do business in the ordinary course, or has a material adverse change in its management, ownership, or control; (e) a petition in bankruptcy is filed by or against Buyer or any guarantor; (f) Buyer admits its inability to pay its debts as they come due or a receiver is appointed for Buyer or any guarantor; or (g) any guarantor, surety, or endorser for Buyer defaults in any obligation or liability to Seller or any affiliate. Whenever an Event of Default exists under this Contract or any other agreement held by Seller or any affiliate, all debts and contracts, if Seller so elects, will become immediately due and payable

Seller's Initials 

TA06 06 001                               - 2 - (4)

Buyer's Initials _____ Co-Buyer _____



**Remedies:** Upon the occurrence of an Event of Default and in addition to all other rights and remedies available under applicable law, Seller may (i) declare this Contract to be in default; (ii) at its option, declare all of the Indebtedness and other debts secured by this Contract immediately due and payable; (iii) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Buyer; (iv) require Buyer to assemble the Collateral and make it available to Seller at a place to be designated by Seller; (v) at the expense of Buyer, make repairs to the Equipment deemed necessary by Seller; and (vi) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s). The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses), shall be applied to the Indebtedness or any other Indebtedness of Buyer to Seller or any affiliate, and any surplus remaining shall be paid to Buyer or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Seller may purchase any or all of the Collateral and/or accept a tradeof property for all or any portion of the purchase price. Seller shall have all of the rights and remedies afforded a secured party under the Uniform Commercial Code as adopted in the State of North Carolina. Buyer agrees that it is liable for and will promptly pay any deficiency resulting from any disposition of Collateral after default. All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Seller and its successors and assigns. No liability shall be asserted or enforced against Seller under this Section except for Seller's intentional wrongful acts. Seller may, in its sole discretion, waive an Event of Default or allow a cure of an Event of Default. Any waiver will not constitute a waiver of any other Event of Default.

**Prepayment:** Buyer may prepay the Total Obligation, in whole or in part, on any Installment Due Date by (i) giving Seller at least thirty (30) days' prior written notice of such prepayment, and (ii) paying to Seller a prepayment premium equal to 5% of the remaining unpaid balance of the Total Obligation (net of unearned Finance Charges), and (iii) paying to Seller the amount of the unpaid balance of the Amount Financed being prepaid on such Installment Due Date, the Installment due on such Installment Due Date, and all other amounts of the Indebtedness then due and remaining unpaid under this Contract. In the event of a default and collection of any amounts subsequent to default, whether or not a payment default has been declared by written notice to Buyer, Buyer shall also be liable for the prepayment fee and unpaid balance as described above.

**Consents and Waivers:** To the extent permitted under applicable law, Buyer expressly consents to and authorizes a court with jurisdiction to issue, without notice, such orders as may be necessary to enforce the terms of this Contract, granting to Seller such powers as Seller shall need to enforce this Contract. Any such court is directed to not require a bond of Seller, the parties agreeing that time is of the essence to protect Seller. To the extent permitted under applicable law, Buyer expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Seller existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, notices shall be in writing, given to Buyer at the address set forth below (or to such other address as provided in writing by Buyer) by registered or certified mail at least ten (10) days before the date of sale and shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Buyer.

**Governing Law:** This Contract is effective when accepted by Assignee at its principal place of business in North Carolina and shall be governed by and construed in accordance with the internal laws of the State of North Carolina without regard to principles of conflict of laws.

**Payments Not to Violate Law:** Nothing herein contained nor any transaction related there to shall be construed or so operate as to require Buyer to pay a finance charge at a rate greater than it is now lawful in such case to contract for under applicable law, or to make any payment orto do any act contrary to applicable law, and Seller shall reimburse Buyer for any finance charge paid in excess of the highest rate allowed by applicable law or any other payment which may inadvertently be required by Seller to be paid contrary to applicable law; and if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Contract, in whole or in part, then such clauses and provisions only shall be held as though not herein contained, and the remainder of this Contract shall remain operative and in full force and effect.

**Location of Buyer:** If Buyer is (i) a corporation, limited liability company, limited partnership, or other registered organization, its state of organization is in the state set forth below, (ii) an individual, his/her principal place of residence is at the address set forth below, (iii) an organization, its place of business, or if it has more than one place of business, its chief executive office, is located at the address set forth below. Buyer agrees that it will not, without the organization or the location of its chief executive office or its place of business if it is an organization, change its state of organization if it is a corporation, limited liability company, limited partnership, or other registered writing of a change in his/her principal place of residence 30 days prior to such change. If Buyer is an individual, Buyer must notify Seller in

**Miscellaneous:** To the extent permitted under applicable law, Buyer waives all exemptions, acceptances, presentment, demand for payment, notice of non-payment, protest, notice of protest, notice of dishonor, and all notices in connection with this Contract, filing of suit, and diligence in collecting the Indebtedness or enforcing any provision of this Contract. To the extent any provision of this Contract shall be determined unenforceable under applicable law, such provisions shall be revised to the minimum extent necessary to make such provision enforceable and all of the other provisions shall be enforceable in accordance with their terms. Buyer agrees to pay on demand, all attorneys' fees and all other costs and expenses which may be incurred by Seller in the enforcement of this Contract or in any way arising out of the protection, assertion, or enforcement of this Contract, whether or not suit is brought. Said fees are recoverable whether incurred in any bankruptcy, insolvency, or receivership proceedings. Buyer shall be further liablefor all costs and expenses of any nature whatsoever incurred by Seller in any repossession, recovery, storage, repair, sale, release, or other disposition of the property, plus interest on each of the foregoing at the rate of 18% per annum or such lesser rate as is required by applicable law from the date said costs and expenses are incurred. Buyer hereby appoints Seller as agent for the benefit of Buyer and grants Seller an irrevocable power of attorney to (i) correct obvious errors and fill in such blanks as serial numbers, date of first payment, and similar provisions; (ii) take any and all actions and to execute and file all documents, including, but not limited to, UCC financing statements, necessary to establish, maintain, and continue the perfected security interest of Seller in the Collateral and/or give public notice of the interests of Seller in any collateral that may secure any obligations or indebtedness of Buyer to Seller, in the name of and on behalf of Seller, at Buyer's sole cost and expense; and (iii) to endorse Buyer's name to any title application, registration, licensing, and related documents for the purpose of securing certificates of title, registrations, and licenses, if any, issued showing Buyer's interests in and/or ownership of the Collateral and other equipment. This power of attorney is coupled with an interest and is irrevocable during the term of this Contract. Buyer shall take all actions and execute and file all documents reasonably requested by Seller to establish, maintain, and continue the perfected security interest of Seller. Buyer authorizes Seller or any officer, employee, or designee of Seller or any assignee of Seller (or any designee of such assignee) to file a financing statement describing the Collateral, and to file financing statements covering assets of Buyer other than the Collateral, in which assets Buyer grants a security interest to Seller and its affiliates to secure payment of the Indebtedness and all other debtsand obligations at any time owing from Buyer to Seller and its affiliates. Buyer shall, within ten (10) days after receipt of notice from Seller, pay all costs and expenses of filing and recording (including the costs of all searches deemed necessary by Seller) to establish, maintain, and determine the validity and priority of Seller's security interest. Any documentation fee may reimburse and/or compensate Seller or Assignee for documenting the transactions contemplated in this Contract and may result in a profit to Seller and/or Assignee. The terms "Buyer," "Seller," "Assignee," and "guarantors" shall include heirs, executors, administrators, successors, or assigns of those parties. The headings at the beginning of each section of this Contractare solely for convenience and do not modify any section. This Contract may be executed and delivered by facsimile signature and a facsimile signature shall be treated as an original. Time is of the essence of this **Contract.**

**Entire Agreement:** This Contract, which Buyer acknowledges reading it in its entirety, together with any written riders or amendments executed by both Buyer and Seller, constitutes the entire agreement between the parties concerning the financing of the Equipment. No modification of this Contract shall be enforceable unless included in a written document duly executed by both Buyer and an officer of Seller.

Seller's Initials

TA06 06 001

-3- (4)

Buyer's Initials SS    Co-Buyer

NOTICE TO BUYER: 1. Liability Insurance coverage for bodily injury and property damage is not included in this Contract. 2. Do not sign this Contract before reading or if the Contract is not complete. 3. You are entitled to an exact andcompletely filled-in copy of the Contract you sign. 4. Keep this Contract to protect your legal rights. 5. See Terms of Credit Sales Contract.

| Seller: Central Indiana Mack Sales & | Buyer: CRESTA INC. | Co-Buyer: |
|---|---|---|
| Signature | Signature | Signature |
| Title  Assistant | Printed Name and Title(s) | Printed Name and Title(s) |
| Date  07/14/2006 | Date  07/14/2006 | Date  07/14/2006 |

**Seller's Name & Address:**

Name: Central Indiana Mack Sales & Service Inc

Street Address (Place of Business): 1325 W. Thompson Road   INDIANAPOLIS IN 462-17

Mailing Address: P.O. Box 51077

Telephone: 317-787-0200      Seller Code: D534

**Buyer(s) Name & Address**

Legal Name(s): CRESTA INC.

Street Address (Place of Business): 2951 OLD HIGGINS RD , ELK GROVE, IL, 60007

Mailing Address: 2951 OLD HIGGINS RD , ELK GROVE, IL, 60007

Telephone: 847-364-6322 Fax:

Federal ID# / SSN: 46-0474406      Co-buyer Federal ID# / SSN:

State of Formation: IL   or State of Residence: IL   County:

---

### Complete for Non-Titled Equipment (construction only)
### Delivery and Acceptance

On _____ (the "Date of Acceptance"), each item of Equipment listed in this Schedule was delivered to Buyer, in conjunction with Buyer's purchase of the Equipment, and Buyer acknowledges its receipt and irrevocable acceptance of each item of Equipment. Buyer represents and warrants to Assigneethat Buyer has. accepted delivery of and inspected each item of Equipment; determined that each item of Equipment contains all of the major components and accessories as agreed; each item of Equipment is in good working order, repair, and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Buyer's requirements without exception. Buyer understands and acknowledges that Buyer is entering into the Agreement based on Buyer's representation and warranty that Buyer will pay in full to Assignee all payments when due as required by the Agreement. Buyer also represents and warrants to Assigneethat no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made by Buyer in the Agreement are correct and complete as though made onand as of the date of this Schedule.

# MACK FINANCIAL SERVICES

## Certificate of Authority

The undersigned officer, partner, member, or manager ("**Officer**") (or each, if more than one) certifies that (s)he is one of the duly authorized and proper officers, partners, members, or managers of CRFSTA INC , (the "**Company**"), holding the title set forth under his/her signature below, and that as such. Officer is authorized to execute this Certificate on behalf of the Company

Officer certifies that the Company is authorized to enter into one or more transactions either directly with, to be assigned to, or as a guarantor in favor of, Mack Financial Services, a division of VFS US LLC, and its affiliates and subsidiaries, (each individually a "**Creditor**") and that the Company is authorized to execute all documents deemed necessary by the Creditor to enter into such transactions (the "**Contracts**").

Officer certifies each of the officers, partners, members, managers, agents or employees of the Company whose names and signatures appear below under "Authorized Signatures" (the "Representative"), is authorized to:  (a) execute and deliver such Contracts(and all related documents, including those necessary to grant and perfect security interests and liens in the assets of the Company) in the name and on behalf of the Company in the form as the Representative executing the same may approve, the approval and authority of such Representative is conclusively evidenced by the execution of the Contracts or documents, such execution to be valid and binding on the Company; (b) cause the Company to perform all of its obligations under the Contracts and other documents; and (c) take all other actions deemed advisable or necessary by such Representative in connection with the foregoing.

Officer certifies that each of the Representatives listed under "Authorized Signatures" below: (i) is a duly appointed Representative of the Company; (ii) is authorized and has the power and authority to **execute and deliver the Contracts and documents on behalf of the Company**, (iii) shall continue to have such power and authority until the Company notifies the Creditor in writing otherwise; and (iv) that the signature next to each person's name and title is the true and accurate signature of such person:

### AUTHORIZED SIGNATURES
**(List ALL Representatives, including Officer, authorized to sign on behalf of Company.)**

| Title: | Name: | Signature: |
|--------|-------|------------|
| PRESEDENT | SVETOZAR SABEV | X |
| | NIKOLAY KOLEV | X |
| | | X |
| | | X |

Officer further certifies that the Company is in good standing in all jurisdictions in which it is required to be qualified to do business and that the execution of the Contracts and any other instruments and documents authorized hereunder is not in violation of the charter, by-laws, organizational documents, operating agreement, or any other agreement or instrument made by the Company.

**Officer has executed this Certificate of Authority on behalf of the Company this 14th day of July, 2006.**

X _____
Print Name: _NIKOLAY KOLEV_
Title: _____

**Important:**
**The person executing this Certificate of Authority cannot sign the remaining Contracts; the signature of another person who is listed under "Authorized Signatures" above is required.** Exception:  A single member LLC or sole officer corporation.

For a general partnership and limited partnership, signature(s) on the Certificate of Authority should be signed by the **general partner(s)** of the partnership.

03 05 TA



# MACK FINANCIAL SERVICES                    **Limited Power of Attorney**

This will authorize the person representing Mack Financial Services, a division of VFS US LLC, and its successors or assigns whose signature appears below:

Signature: _____

For Mack Financial Services Use Only

Attorney-in-fact: _____

Print Name

to act as my agent and attorney-in-fact, with power of substitution, to do all acts and things in all matters pertaining to the application for titles, duplicate titles, the recording of the proper liens on such titles, registrations, duplicate registrations and licenses and/or renewals for the motor vehicles described below, and to execute and endorse all documents, checks or drafts issued in the name of or to the undersigned with respect to any insurance policy relating to the motor vehicles described below, and submit any proof of loss to collect such insurance:

| Year | Make | Model | VIN/Serial Number |
|------|------|-------|-------------------|
| 2002 | Volvo | VNL64T-660 - | 4V4NC9GH62N330541 |
| 2002 | Volvo | VNL64T-660 - | 4V4NC9GH81N330542 |
| 2002 | Volvo | VNL64T-660 - | 4V4NC9GH12N330544 |
| 2002 | Volvo | VNL64T-660 - | 4V4NC9GH32N330545 |
| 2002 | Volvo | VNL64T-660 - | 4V4NC9GH82N330508 |

This power of attorney is coupled with an interest and is irrevocable during the term of any agreement between the undersigned and Mack Financial Services.

Dated as of: _____.

By: CRESTA INC. _____              By (Co-Buyer if any):
Signature: _____                    Signature: _____
Printed Name: _Svetozar Saber_                Printed Name: _____
Title: _PRESIDENT_                            Title: _____

STATE OF _Indiana_

_Marion_ COUNTY

The undersigned, a Notary Public in and for said County in said State, do hereby certify that _Svetozar Saber_ signed the foregoing Power of Attorney, and acknowledged before me on this day that, being informed of the contents of the above and foregoing, he/she executed the same voluntarily on this date.

Given under my hand and official seal of office this ___14th___ day of ___July___ ___2006___

_____
Signature of Notary Public

(OFFICIAL SEAL)

My commission expires: _2.20.09_

07-04 FA

# MACK FINANCIAL SERVICES

## Assignment
### (Credit Sales Contract)

| NAME AND ADDRESS OF BUYER | | | |
|---|---|---|---|
| Legal Name | CRESTA INC. | | |
| Street Address | 2951 OLD HIGGINS RD | | |
| City | ELK GROVE | State: IL | Zip: 60007 |

Enter specified Equipment information below, or contract Number, if known:

| CUSTOMER NO. | 7552902 | SCHEDULE NO. | |
|---|---|---|---|

In accordance with and subject to all of the terms and conditions set forth in Dealer's existing Retail Finance Plan Agreement (the "Agreement") and as assigned to VFS US LLC (the "Company"), which Agreement is hereby incorporated by reference, the undersigned dealer as ("Assignor" or "Dealer"), for value received, hereby sells, assigns, and transfers the Credit Sales Contract, to which this Assignment has been affixed (the "Contract"), to Company, together with all rights and interests of the undersigned in the Equipment and other collateral described in said Contract, and hereby reaffirms its representations, warranties, and covenants contained in the Agreement as of the date of this Assignment. In connection with its obligations under the Agreement to provide Company with a perfected security interest, or good title, in the units, Dealer hereby agrees that such obligations shall apply throughout the term of the Contract, and with respect to construction equipment: (i) Dealer will give Company notice if Customer requests an MSO for any unit or if Dealer delivers an MSO to Customer; and (ii) Dealer will ask Customer whether Customer intends to title a unit prior to giving Customer an MSO, and will advise Company of such intention in writing. Dealer acknowledges that the Commission or finance participation rate, as applicable, paid for this Assignment is $ 2,590.68 and that the annual rate of interest used to calculate the Finance Charge in Item 14 of the Contract is 10.75%.

| Year | Make | Model | VIN/Serial Number | Attachments/Body |
|---|---|---|---|---|
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH62N330541 | |
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH81N330542 | |
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH12N330544 | |
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH32N330545 | |
| 2002 | Volvo | VNL64T-660 | 4V4NC9GH82N330508 | |

This assignment is made: {Check One}

(✗) **Without Recourse**, except as to Assignor's covenants, representations, and warranties contained in the Agreement and to the extent of Commission or finance participation rate, as applicable, and other compensation received by Assignor.

( ) **With Full Recourse**. (Full guaranty of Assignor ) In addition to its covenants, representations, and warranties contained in the Agreement, after the occurrence of an Event of Default under the Contract, Dealer unconditionally guarantees and promises to pay upon demand the full amount of Total Obligation (as defined in the Contract) remaining unpaid, including all legal and repossession costs incurred by Company, regardless of whether Company has repossessed the Equipment described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

( ) **With Limited Recourse**. In addition to its covenants, representations, and warranties contained in the Agreement and the Commission or finance participation rate, as applicable, Assignor is responsible for payment of an amount equal to 0 percent of the Total Obligation due under the Contract as of the date of the occurrence of the Event of Default.

( ) **With Other Recourse**. In addition to its covenants, representations, and warranties contained in the Agreement and the Commission or finance participation rate, as applicable, Assignor is responsible for $ .

Dealer subsidy (if applicable). Dealer is responsible for a sum of $0.00 to be used to reduce the Customer's interest rate on the Contract. The subsidy is to be paid in a single advance payment.

**THIS ASSIGNMENT is made by Dealer as of 07/14/2006.**

Dealer: Central Indiana Mack Sales & Service Inc
By (Signature): _[signature]_
Print/Type Name: Donna Spangler
Title: Assistant

Accepted by: Mack Financial Services, a division of VFS US LLC
By (Signature): _[signature]_
Print/Type Name: Melissa Garland
Servicing Agent

Assign07-004-TA


**EXHIBIT**
B
ALL-STATE LEGAL®



**Mack Financial Services**
7025 Albert Pick Road. Suite 105 (27409)
PO Box 26131
Greensboro, NC   27402-6131

Toll Free  866-281-8585

September 17, 2007

CRESTA INC.
777 ROHLWING RD
ADDISON, IL 60101

RE: Contract Number 501-7552902-001

Dear CRESTA INC.:

This letter is to advise you that your contract is now in default for the total past due amount of
$    18,542.97.  This amount includes installments, taxes, and other charges.  This amount also
includes late fees which total $882.99.

If your account is still in default on 09/27/2007 we reserve the right to take all action necessary to
recover our equipment, terminate the account and enforce all of our other rights and remedies,
including recovery of reasonable attorney's fees.  _ANY AMOUNT RECEIVED LESS THAN THE_
_TOTAL  PAST  DUE  WILL  NOT  CURE  THE  DEFAULT.  In addition, if you have additional_
_obligations/accounts with VFS US LLC and/or an affiliate, those obligations/accounts are also in_
_default if this account is in default._

If payment for the above total past due amount has been remitted, please call us at the number
listed below.

Sincerely,

Wanda Pegg
Asset Recovery Specialist
(866) 281-8585 ext. 4603
Fax (336) 931-4603
Mack Financial Services, a division of VFS US LLC

cc:   Collections Manager

**Notice to Individual Customers and Individual Guarantors:**

A 106.07

**EXHIBIT**

_C_



We may report negative information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

AJ06.07

# DEFICIENCY BALANCE CALCULATION

CUSTOMER'S NAME:  **CRESTA INC.**                    CONTRACT NUMBER:  **501-7552902-001**

| | | | | | |
|---|---|---|---|---|---|
| Buyout Date: | 12/13/2007 | Vin # | 4V4NC9GH62N330541 | Amt: | $  33,680.57 |
| Buyout Date: | 12/13/2007 | Vin # | 4V4NC9GH12N330544 | Amt: | $  33,768.89 |
| Buyout Date: | 12/13/2007 | Vin # | 4V4NC9GH82N330508 | Amt: | $  33,916.06 |
| Buyout Date: | 12/13/2007 | Vin # | 4V4NC9GH32N330545 | Amt: | $  34,210.42 |
| Buyout Date: | 12/13/2007 | Vin # | 4V4NC9GH82N330542 | Amt: | $  35,093.37 |
| Buyout Date: | | Vin # | | Amt: | |
| Buyout Date: | | Vin # | | Amt: | |

TOTAL BUYOUT AMT:                                                    $   170,669.31

Plus:
| | | |
|---|---|---|
| Repossesion Fees | $ | 6,000.00 |
| Storage | $ | - |
| Commission | $ | - |
| Inspection Fees | $ | 1,500.00 |
| Cleaning Fee | $ | 2,600.00 |
| Repairs/Mechanic's Lien | $ | 2,125.00 |
| Transportation Fees | $ | 2,000.00 |
| Other | $ | - |
| TOTAL FEES | | $   14,225.00 |

Minus
| | | |
|---|---|---|
| Gross Sales Proceeds: | $ | 70,000.00 |
| Guarantor Payment | $ | - |
| Insurance: | $ | - |
| TOTAL DEDUCTIONS | | $   70,000.00 |

Customer's Deficiency Balance                              $   114,894.31

Completed by:        _Tammie Reynolds_____        Date: ___12/17/2007___

**State Of North Carolina**

**County Of Guilford**

Sworn & subscribed before me this _____ day of _____, 200__, by _____, (I have personal knowledge of the identity of the principal)

_____
Notary Public
My Commission Expires: _____





**F I N A N C I A L**
**S E R V I C E S**

December 17, 2007

**CRESTA INC.**
**2951 OLD HIGGINS RD.**
**ELK GROVE VILLAGE, IL  60007**

RE:    Contract No: **501-7552902-001**    VIN#:  **4V4NC9GH62N330541,**
**4V4NC9GH12N330544, 4V4NC9GH82N330508, 4V4NC9GH32N330545,**
**4V4NC9GH82N330542**

**Collateral: 2002 VOLVO (5)**

Dear **CRESTA INC.:**

As you are aware, you failed to pay your debt when due.  As a result, you are in
default under the terms of the indebtedness. By previous letter, you were given
formal notice of your default under the terms of the **CREDIT SALES**
**CONTRACT.**  Mack Financial Services proposed to sell the property securing
the debt if you failed to cure the default.

You failed to cure the default.  A sale of the property was held.  The property sold
for **$70,000.00** leaving a total deficiency balance of **$114,894.31.**  Demand is
hereby made upon you to pay the deficiency balance to Mack Financial Services
within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this
letter, please be advised that Mack Financial Services will seek to enforce the
attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please
contact our office to arrange suitable payment arrangements within 10 days of
this letter.

Please forward all payments to:

Mack Financial Services
C/O Citi Bank
P. O. Box 7247-0236
Philadelphia, PA   19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
(877) 865-8623 Ext. 3862

**Mack Financial Services**
7025 Albert Pick Road, Suite 105 (27409)
PO Box 26131
Greensboro, NC  27402-6131

Toll Free: 866-281-8585



**EXHIBIT**

*E*

# MACK FINANCIAL SERVICES

### Continuing Guaranty

Customer No. __7552902__

For valuable consideration, each of the undersigned ("Guarantor"), jointly and severally unconditionally guarantees to Mack Financial Services, a division of VFS US LLC, and its affiliates and subsidiaries (each individually a "Creditor") the full, prompt, and complete payment and performance of all obligations of all sums, moneys, notes, loans, indebtedness, leases, or lease payments that shall at any time be due and payable to the Creditor and its successors and assigns, from CRESTA INC. ("Debtor"), whether now owing or hereafter contracted, absolute or contingent, including all liabilities or obligations that Debtor has incurred or may incur or from other dealings by which the Creditor may become in any manner a creditor of Debtor (collectively the "Obligations").

This Guaranty is a continuing guaranty and shall not be considered wholly or partially satisfied by the payment at any time of any sum or amount, due or hereafter owing upon any Obligation, but shall continue until terminated by written notice actually received by the Creditor and shall then continue, notwithstanding such termination, as to any Obligation created or incurred by Debtor prior to such receipt of termination.

To the extent permitted under applicable law, Guarantor waives: (i) notice of acceptance, all notices and consents of any kind, protest, dishonor, non-payment, and demand for presentment; (ii) until the Obligations are irrevocably paid in full any claim, right, or remedy which Guarantor may now have or hereafter acquire against Debtor including the right of subrogation; and (iii) all exemptions and defenses given to sureties and guarantors other than the complete fulfillment, performance, and payment of all Obligations.

The liability of each Guarantor is direct and unconditional. Guarantor acknowledges that the Creditor would not have entered into any transaction with Guarantor without this Guaranty and that the Obligations are of substantial benefit to Guarantor. The Creditor may proceed against each Guarantor without resorting to anyother right, remedy, security, or entity. All of the Creditor's remedies for the Obligations or this Guaranty are cumulative. Guarantor agrees that the Creditor may extend any deadline or payment due date, modify any agreement, defer acceleration, postpone the enforcement of any agreement, and release or add any collateral and any party primarily or secondarily liable without affecting the liability of any Guarantor. There are no conditions precedent to this Guaranty.

Guarantor represents and warrants tothe Creditor that (i) if an entity Guarantor is a _____ (type of entity), duly established and in good standing under the laws of the State of  ; (ii) the parties executing this Guaranty are authorized to do so; and (iii)this Guaranty has been duly executed, authorized, and delivered and is enforceable against Guarantor in accordance with its terms. In the event of any dispute regarding this Guaranty, Guarantor agrees to pay all costs and expenses of the Creditor (including reasonable attorneys' fees and expenses) incurred in connection with such dispute, regardless of whether litigation or other action is instigated.

This Guaranty constitutes the entire agreement of the Guarantor regarding the guaranty of Debtor's Obligations. No amendment, modification, or waiver of any provision of this Guaranty shall be valid unless in writing and executed by an officer of the Creditor. This Guaranty shall extend to and bind the heirs, executors, administrators, successors, and assigns of each of Guarantor and the Creditor.

This Guaranty shall be governed by the internal laws of the State of North Carolina. Any provisions contrary to, prohibited by, or invalid under applicable laws or regulations shall be revised to the minimum extent necessary to make such provision enforceable, but shall not invalidate the remaining provisions of this Guaranty. **Time is of the essence of this Guaranty.**

| | |
|---|---|
| Signature of Guarantor [SEAL] | Signature of Guarantor [SEAL] |
| Print Name: SVETOZAR SABEV | Print Name: |
| | Title: |
| SSN: 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 | Fed ID: |
| Address: 711 N. KENNICOTT AVE, ARLINGTON HEIGHTS, IL 60007 | Address: |
| Date: 07/14/2006 | Date: 07/14/2006 |
| Signature of Guarantor [SEAL] | Signature of Guarantor [SEAL] |
| Print Name: | Print Name: |
| | Title: |
| SSN: | Fed ID: |
| Address: | Address: |
| Date: 07/14/2006 | Date: 07/14/2006 |

---

*Signature(s) of Guarantor(s) are required to be* either *notarized or witnessed by two (2) witnesses.*

Witness: _____      Witness: _____
Print Name: _____      Print Name: _____

State of _Indiana_ , County of _Marion_
I _Michelle Moler_ _____ do hereby certify that _Svetozar Sabev_

the _____ of _____
(title - if entity)                    (name of Guarantor - if entity)

personally appeared and executed this Guaranty before me this _14th_ day of _July_ 2006
My commission expires _2-22-09_

_____
Signature of Notary Public                          [SEAL]

02 06 14

ALL-STATE LEGAL®

**EXHIBIT**

F



**Mack Financial Services**
7025 Albert Pick Road, Suite 105 (27409)
PO Box 26131
Greensboro, NC  27402-6131

Toll Free: 866-281-8585

September 17, 2007

SVETOZAR SABEV
711 N. KENNICOTT AVE
ARLINGTON HEIGHTS, IL 60007

RE: Contract Number 501-7552902-001

Dear SVETOZAR SABEV:

This letter is to advise you that your contract is now in default for the total past due amount of
$    18,542.97.  This amount includes installments, taxes, and other charges.  This amount also
includes late fees which total $882.99.

If your account is still in default on 09/27/2007 we reserve the right to take all action necessary to
recover our equipment, terminate the account and enforce all of our other rights and remedies,
including recovery of reasonable attorney's fees. *ANY AMOUNT RECEIVED LESS THAN THE*
*TOTAL PAST DUE WILL NOT CURE THE DEFAULT.*  In addition, if you have additional
obligations/accounts with VFS US LLC and/or an affiliate, those obligations/accounts are also in
default if this account is in default.

If payment for the above total past due amount has been remitted, please call us at the number
listed below.

Sincerely,

Wanda Pegg
Asset Recovery Specialist
(866) 281-8585 ext. 4603
Fax (336) 931-4603
Mack Financial Services, a division of VFS US LLC

cc:   Collections Manager

Notice to Individual Customers and Individual Guarantors:

A106.07

**EXHIBIT**

G7

ALL-STATE LEGAL®



We may report negative information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.



**FINANCIAL SERVICES**

December 17, 2007

**SVETOZAR SABEV**
**711 N. KENNICOTT AVE**
**ARLINGTON HEIGHTS, IL  60007**

RE:    Contract No: **501-7552902-001**    VIN#:  **4V4NC9GH62N330541,**
**4V4NC9GH12N330544, 4V4NC9GH82N330508, 4V4NC9GH32N330545,**
**4V4NC9GH82N330542**

**Collateral: 2002 VOLVO (5)**

Dear **SVETOZAR SABEV:**

As you are aware, you failed to pay your debt when due.  As a result, you are in default under the terms of the indebtedness. By previous letter, you were given formal notice of your default under the terms of the **CREDIT SALES CONTRACT.**  Mack Financial Services proposed to sell the property securing the debt if you failed to cure the default.

You failed to cure the default.  A sale of the property was held.  The property sold for **$70,000.00** leaving a total deficiency balance of **$114,894.31.**  Demand is hereby made upon you to pay the deficiency balance to Mack Financial Services within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter, please be advised that Mack Financial Services will seek to enforce the attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:

Mack Financial Services
C/O Citi Bank
P. O. Box 7247-0236
Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
(877) 865-8623 Ext. 3862

**Mack Financial Services**
7025 Albert Pick Road, Suite 105 (27409)
PO Box 26131
Greensboro, NC  27402-6131

Toll Free: 866-281-8585



ALL-STATE LEGAL®    **EXHIBIT**

_H_